OPINION OF THE COURT
Albert A. Blinder, J.
This is a motion by the claimant for summary judgment. The claim which was filed on September 6, 1977 seeks damages for the negligence of the Kingsboro psychiatric facility in failing to exercise reasonable care and diligence in safeguarding the claimant when she was an inpatient at the facility. The claim alleges that claimant was raped by an employee of the facility on December 15, 1976. The defendant filed an answer on December 16,1977. It pleads general denials.
This motion is brought under CPLR 3212. Subdivision (b) thereof provides that a motion for summary judgment shall be supported by affidavit, a copy of the pleadings and by other available proof. The former is required to show that there is no defense to the cause of action or that the defense has no merit. The law provides that the motion is to be granted if, upon all the papers and proof submitted, the cause of action is established sufficiently to warrant the court as a matter law to direct the entry of judgment in favor of the claimant. The motion will be defeated if the defendant can show facts sufficient to require a trial of any issue of fact, other than an issue as to the amount or the extent of the damages.
In support of her motion, claimant has annexed her affidavit. It indicates that she was admitted as an inpatient to the Kingsboro Psychiatric Center, on or about October 20, 1976, suffering from a severe mental disorder.[1] On December 15, 1976 claimant was taken for an EEG examination. She was escorted by a female staff member, a mental health therapy aide. It is alleged that in-violation of the hospital rules, the female staff member did not accompany claimant into the *810 EEG room for the test, which was being administered by a male attendant, an employee of the State facility.
The affidavit states "[t]hat in the EEG room, I was sexually assaulted and raped by the EEG technician employed by the hospital, one Gary reíd.”
Claimant, in further support of her motion, has annexed copies of various records maintained by the State facility, which pertained to the incident. The records consist of copies of the incident report, excerpts from the minutes of the Special Incident Review Committee, a statement by the mental health therapy aide, a statement by the team leader, a medical doctor’s consultation, a memorandum to the Special Review Committee and a transcript of an interview with claimant and the mental health therapy aide (in the presence of others) as conducted by one Dr. N. S. Lehrman, the clinical deputy director.
These records confirm that, inter alla, on December 15, 1976 the claimant was scheduled for an EEG. She was taken by a female mental health therapy aide from her unit at approximately 9:15 a.m. to the EEG office where they arrived at approximately 9:45 a.m. The EEG technician, Gary Reid, told the mental health therapy aide that she would have to wait outside while he gave the patient the test.[2]
The claimant was in the room alone with the male technician from 9:45 a.m. until 11:00 a.m. The documents annexed to this motion indicate that when the claimant came out of the room she was distraught. She told the female attendant that she did not want to go back anymore. As she returned to her ward she attempted to escape. The patient was reported by the female attendant to have told her that "he did bad * * * you know * * * way of say, he did bad things”, that he took his pants off, felt her breasts, and had sex with her. When asked why she did not scream, the claimant indicated that her mouth was covered. The claimant’s behavior was described as confused and frightened.
The evidence also indicates that the female attendant took claimant to the bathroom. The attendant examined her panties. It was stated that they were "dingy like” and "had like a wet stain”.
*811 A report of the incident was made to superior ward employees. Thereafter, the claimant was sent to the Kings County Hospital for further examination. She arrived at that facility at 2:23 p.m. The Kings County Hospital found, on examination of the claimant, no sign of trauma. It did, however, find "motile sperm on wet smear.”
The State’s facility had a rule prohibiting a female patient from remaining alone with a male employee. The mental health therapy aide was questioned at the inquiry as to the reason she allowed the patient to enter the EEC room without accompanying her. The attendant had no explanation although she had been working at the facility for eight months and should have known the rule. The records are replete with references to the mental health therapy aide’s error (which was rationalized with the explanation that she thought she was "obeying a superior”), e.g., Dr. Lehrman was quoted as saying "It was a mistake, You shouldn;t [sic] allow a man employee to be alone with a female pt.”
 The defendant, as above stated, has pleaded general denials. The answer contains no affirmative defenses. The affidavit in opposition does not assert any factual controversy. Nothing is alleged which would warrant a trial of any issue of fact as is required by CPLR 3212 (subd [b]). Defendant’s counsel merely argues that "[n]o judicial scrutiny of this material nor its admissibility into evidence has been afforded; no assessment has been made by the trier of law or fact as to its validity.” This appears to be frivolous. It is not asserted that the exhibits attached to the motion are inadmissible. The defendant cannot stand silent in opposition. It is incumbent upon it to come forward and lay bare its proof of evidentiary facts showing that there is a bona fide issue requiring a trial. "To defeat summary judgment the opponent must present evidentiary facts sufficient to raise a triable issue of fact, and averments merely stating conclusions, of fact or of law, are insufficient”. (Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 290; Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255, 259; 4 Weinstein-KornMiller, NY Civ Prac, par 3212.12.)
The key facts asserted in claimant’s affidavit are that there was a direct violation of the hospital rules and concomitant breach of the hospital’s duty to her which resulted in her *812 assault and rape.[3] The defendant’s papers in opposition make no reference to these facts. The failure to deny the facts is therefore deemed a tacit admission of their truth. (Two Clinton Sq. Corp. v Gorin Stores, 51 AD2d 643.) Concededly, summary judgment is a drastic remedy. It should be employed only when there is no doubt as to the absence of triable issues. When, however, there is no genuine issue to be resolved at trial, the case should be summarily decided. (Andre v Pomeroy, 35 NY2d 361, 364.)
Defendant has attempted to seek refuge in the pending criminal proceedings against the alleged perpetrator, stating that "[notwithstanding the outcome of this criminal trial, the purported liability of the State of New York for the alleged acts of an employee such as are portrayed here itself presents serious questions which, it is urged, can only be resolved at trial. Cf. Cornell v State, 46 N Y 2d 1032.” We fail to view pendency of criminal proceedings as relevant to the issues at bar. The conviction or acquittal of the technician does not and will not present a question of fact. Defendant has not disputed the facts alleged by the claimant.
The defendant suggests the possibility that the employee’s conduct may have been outside the scope of his employment and that it is not, therefore, liable. Cornell v State of New York (60 AD2d 714, affd 46 NY2d 1032) is cited. The Court of Appeals in Cornell affirmed the dismissal of a claim seeking damages resulting from a homosexual act, committed by an attendant, on a patient at a State hospital. The Appellate Division had stated that there was no evidence that the State even knew or should have known of the attendant’s homosexual tendencies. Under those circumstances the risk that the attendant might commit a homosexual act with the claimant was not reasonably foreseen. It also held that the act in *813 question was obviously neither within the scope of the attendant’s employment nor done in furtherance of his duties to his employer. The Court of Appeals, in affirming, held that the State would not be held vicariously liable for intentional torts committed by its employees outside the scope of their employment on the basis of a purported special protective duty owed the victim. It refused to extend liability to situations which evolve "if those employees are not acting in the scope of their employment and the State is free from any fault.” (Cornell v State of New York, 46 NY2d, at p 1034.)
There is in the claim at bar, no question as to liability being predicated upon a tort committed by an employee acting outside the scope of his employment with the State being otherwise free from fault. Instead, the claim of negligence results from a failure of the facility to abide by statute, State and hospital regulations.
The law, rules and regulations as indicated above were breached. There is no question of that fact. The conduct complained of was completely foreseeable. Its foreseeability undoubtedly was one of the very reasons for the requirement that female patients be accompanied by a female staff member. In Velez v State of New York (Claim No. 57635, Blinder, J.), this court found that the defendant, in a somewhat similar case, failed in its duty properly to supervise the claimant and that the act complained of was foreseeable.
It is therefore the decision of this court that claimant is entitled to summary judgment. The clerk is therefore directed to enter an interlocutory judgment on liability only. The matter is thereafter to be restored to the trial calendar for further proceedings to assess the amount or the extent of the damages in accordance with CPLR 3212 (subd [c]).

. The exhibits attached to the motion indicate that her diagnosis was "Schizophrenia, Catatonic Type (295.2).”

. It appears from the transcript that on a previous occasion, when the same mental health therapy aide took the claimant for an EEG, the EEG technician also had the female mental health therapy aide stay outside the room while the test was administered.

. Section 33.17 of the Mental Hygiene Law states: "Any female patient who is being transported to or from a facility shall be accompanied by another female, unless accompanied by her father, brother, husband, or son.” In addition, there is a rule adopted by the Commissioner of Mental Hygiene which provides that the treatment team of the patient, after consultation with the patient, shall determine who may accompany a woman patient being transported to or from a facility. (14 NYCRR 17.7.) A facility has been defined by the Mental Hygiene Law as being "any place in which services for the mentally disabled are provided and includes but is not limited to a psychiatric center, developmental center, institute, clinic, ward, institution, or building”. (Mental Hygiene Law, § 1.03, subd 6.) Clearly in the court’s opinion, the statute which requires female patients to be accompanied by another female includes the situation where a female patient is being transferred from a ward into another ward or another part of the same facility for medical treatment or diagnosis.