In the Matter of MICHAEL FORD, as Director of Manhattan Psychiatric Center, Appellant, v CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., et al., Respondents.

First Department, June 28, 1983

### APPEARANCES OF COUNSEL

*Robert L. Schonfeld* of counsel (*Thomas P. Dorsey* and *Arlene R. Silverman* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for appellant.

*Michael J. Smith* of counsel (*Roemer & Featherstonhaugh,* attorneys), for respondents.

*Peter Margulies* of counsel (*Ronald N. Gottlieb,* attorney), for Mental Health Information Service, First Judicial Department, *amicus curiae.*

*Nesbitt & Nesbitt* for the Association of Boards of Visitors of New York State Facilities for the Mentally Disabled, *amicus curiae.*

### OPINION OF THE COURT

CARRO, J.

The issue here is a very narrow one but its implications reflect glaringly on the spectrum of situations in which the State of New York takes on responsibility to protect and

care for individuals, particularly those who lack capacity. In this light, we find the fiduciary nature of the State's role as guardian to be inviolate as a matter of public policy, such that neither the State itself nor any individual agency of the State may bargain away or otherwise abrogate this continuing duty.

The individual respondent, Eric Braithwaite, worked as a mental hygiene therapy aide at the Manhattan Psychiatric Center, a facility of the New York State Office of Mental Health. As a member of respondent Civil Service Employees Association, Inc. (CSEA), if a disciplinary proceeding was commenced against him, Braithwaite was entitled to demand arbitration pursuant to the collectively bargained-for agreement between CSEA and the State. This he did, when on September 2, 1982 the Director of Manhattan Psychiatric Center suspended him from duty without pay, charged him with misconduct and assessed the penalty of dismissal against him. Specifically, it was charged that on May 29, 1982 Braithwaite had "physically abused" a female patient by taking her into a janitor's closet where he "induced her to have sexual intercourse".

The American Arbitration Association (AAA) arbitrator was asked to decide three issues, to wit:

"1. Is Eric Braithwaite guilty of the charges preferred against him?

"2. If so, is the proposed penalty to be assessed against him appropriate?

"3. Was there just cause for the employer to suspend him without pay effective September 7, 1982?"

After hearing lengthy testimony the arbitrator determined that, despite respondent's denials, "a good preponderance of the evidence" satisfied him "that the evidence is overwhelming that Braithwaite was with [the patient] that night and had sex with her." Accordingly, there was also found to be just cause for Braithwaite's suspension without pay.

These two parts of the arbitrator's award are not contested by either appellant or respondents, and we therefore accept fully the factual findings that Braithwaite induced the patient to have intercourse with him, gave her a $10

bill for her affections, lied when questioned about it and upset the patient enough that she was too frightened to see a doctor about the pain she was in. After discussing these facts, the arbitrator nonetheless concluded:

"As to the penalty of termination proposed by the State, I consider it too severe. The intercourse was consensual. There is nothing to indicate that JS did not know why she left the ward with Braithwaite. She herself said she went willingly and consented to the act. Of course, it is wrong for staff people to have sex with patients, but the fact that patients have sex is evidently low on the scale of offenses. Since it was consensual, whatever physical abuse was involved was minimal * * *

"When I consider the severity of other instances of patient abuse, I believe that an employee with 18 years of good service who is guilty of having intercourse with a willing patient should have an opportunity to redeem himself. Braithwaite has been suspended without pay since September 7, 1982. I propose a disciplinary suspension of two months which would entitle him to reinstatement to his previous position as of November 7, 1982."

The State appeals from this part of the award, asking us to vacate it on public policy grounds. The Attorney-General points out that the policy manual of the New York State Office of Mental Health specifies that "any sexual activity between employee and patient" constitutes "Physical Abuse". Subdivision (a) of section 33.03 of the Mental Hygiene Law commands that "Each patient in a facility and each person receiving services for mental disability shall receive care and treatment that is suited to [her] needs and skillfully, safely, and humanely administered with *full respect for [her] dignity and personal integrity*" (emphasis added).*

Further embodiment of the State policy of protecting its female wards from sexual abuse is section 33.17, which provides that "[a]ny female patient who is being transported * * * shall be accompanied by another female, unless accompanied by her father, brother, husband, or son."

---

* See, also, Mental Hygiene Law, § 33.19, subd (a).

The Attorney-General also argues that Braithwaite might well be guilty of a class A misdemeanor in that he was "endangering the welfare of an incompetent person when he knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a person who is unable to care for himself because of mental disease or defect." (Penal Law, § 260.25.)

Lastly, we note that rape in the third degree, a class E felony, is defined as "engag[ing] in sexual intercourse with a female who is incapable of consent by reason of some factor other than being less than seventeen years old" (Penal Law, § 130.25).

While we are mindful that an arbitration hearing, conducted without all of the formalities and constitutional protections of a trial, cannot confer criminal liability on respondent, we do give weight to these sections of the Penal Law as expressions of the public policy of the State of New York. (Accord *Roy v Hartogs,* 81 Misc 2d 350, 352 [per ALLEN MURRAY MYERS, J.], 85 Misc 2d 891.) The State's failure to itself observe this public policy and fulfill its fiduciary duty to its wards can, even without a determination of criminal culpability, expose the State to liability. (Cf. *Cucalon v State of New York,* 103 Misc 2d 808 [Court of Claims, 1980, per ALBERT BLINDER, J.].) Thus, the State's duty goes beyond protection of those basic rights secured to the institutionalized mentally disabled by the United States Constitution. (See, e.g., *Youngberg v Romeo,* 457 US 307.)

Respondent maintains that, all of the foregoing notwithstanding, we are without power to vacate the award because of the "traditional rule that an arbitrator's decision is not reviewable because of alleged errors in construing the law and the facts * * * [even where there has been an] egregious disregard for the state of the law and the facts." (*Matter of Angel Fabrics* [*Cravat Pierre, Ltd.*], 51 AD2d 951, 952; see, also, *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411, 419 [BREITEL, Ch. J., concurring].) Respondent relies most heavily on Court of Appeals decisions in *Matter of Allen* (*New York State*) (53 NY2d 694) and *Matter of Civil Serv. Employees Assn. v Town of Harrison* (48 NY2d 66

[per JONES, J.]) as recognizing the complete jurisdiction of the arbitrator to decide a matter submitted pursuant to CSEA contract and to fashion a penalty assessment deemed appropriate by the arbitrator.

This argument is circular, however, in that it avoids the very point we make, namely, that the arbitrator exceeded his power and made an irrational award in violation of "a public policy which is beyond waiver" (*City of New York v Uniformed Firefighters Assn. Local 94, IAFF, AFL-CIO,* 58 NY2d 957, 959). "Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate." (*Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614, 616-617 [per BREITEL, Ch. J.]; accord *Matter of Sprinzen [Nomberg],* 46 NY2d 623, 630, 631 [per JASEN, J.]; *Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist,* 38 NY2d 137, 143 [per JONES, J.].) The *Allen* decision upon which respondents rely so heavily also recognized the "bounds of rationality" for arbitration awards (53 NY2d, at p 696).

Any other result would, in affronting public policy by making light of the State's fiduciary responsibility to its wards, discourage citizens from entrusting their loved ones to State care and defeat the very purpose for which the Mental Hygiene Law was enacted and the Office of Mental Health created. No collective bargaining agreement to arbitrate can be allowed to destroy the very master it serves. It may be that the arbitrator was not fully presented with the vast array of public policy expressions which require vacatur of the award. Certainly it should have been pointed out to him that mental patients are incapable of "consent" in the context here presented. The determination of "physical abuse" which the arbitrator arrived at cannot be passed off lightly with an adjective such as "minimal". We find such characterization of respondent's conduct to be appalling and the arbitrator's refusal to award termination to be plainly irrational.

Accordingly, the judgment entered January 3, 1983 in Supreme Court, New York County (IRVING KIRSCHEMBAUM, J.), is reversed on the law and the facts, without

costs, the State's article 78 petition is granted, so much of the award as directed a penalty of only two months' suspension is vacated, and in the exercise of discretion we remand the matter to a different arbitrator for further proceedings not inconsistent with this opinion.

ASCH, BLOOM, FEIN and ALEXANDER, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 3, 1983, reversed, on the law and the facts, without costs and without disbursements, the State's article 78 petition granted, so much of the award as directed a penalty of only two months' suspension vacated, and in the exercise of discretion, we remand the matter to a different arbitrator for further proceedings not inconsistent with the opinion of this court.