OPINION OF THE COURT
Edward M. Horey, J.
The facts which give rise to the litigation at bar are interesting and unusual.
One, David A. Turner, began employment with the respondent City of Salamanca on February 17, 1981 as a policeman.
In accordance with applicable Rules and Regulations of the Civil Service Commission, Officer Turner underwent a medical examination on February 24, 1983 in Salamanca, New York. As a part of that examination Officer Turner’s vision was tested. The report of the test appears to indicate a 20/20 visual acuity in both right and left eyes. The report makes no mention of the use of contact lenses and thus on its face reports the 20/20 acuity as uncorrected.
*820 On the basis of the February 24, 1983 physical examination in Salamanca, Officer Turner was appointed to a permanent position of police officer effective July 16,1983.
Thereafter, on May 14, 1984, Officer Turner underwent another physical examination in connection with an application for employment with the Jamestown, New York, Police Department. Application for employment with the Jamestown Police Department had been made by Officer Turner before he received his appointment with the Salamanca Police Department. However, his physical examination for the Jamestown position followed his appointment with the Salamanca Police Department.
The visual acuity of Officer Turner under the Jamestown physical examination of May 14, 1984 indicated acuity of both eyes at 20/200 without corrective lenses and 20/20 with corrective lenses.
It is not contested that the minimum accepted standard of visual acuity for a police officer is: not worse than 20/40 uncorrected with each eye tested separately; and corrected with both eyes tested together no worse than binocular vision of 20/20. (Reference 9 NYCRR 6000.3 [d] [2] [i].)
The information that Officer Turner had failed visual examination in Jamestown on May 14, 1984 was relayed to the Cattaraugus County Civil Service Commission and in turn to the Salamanca Civil Service Commission.
An investigation by the Salamanca Civil Service Commission of Officer Turner’s visual acuity was ordered. It resulted in demands by the Commission for release of certain medical records of Officer Turner at the Council Optometric Group in Olean, New York. These were not forthcoming. A series of meetings between Officer Turner and the Commission were scheduled. Altercation over the attendance of counsel and other issues ensued and no meeting was ever had.
In July 1984 the Salamanca Civil Service Commission revoked the certification of Officer Turner. The same Commission has persistently refused to certify Officer Turner to the City of Salamanca as an eligible employee in the State Civil Service. Because of the absence of such certification the City of Salamanca has refused to pay Officer Turner.
Following his termination, Officer Turner opted to proceed under a collective bargaining agreement between his employer the City of Salamanca and Local No. 805 CSEA/AFSCME. Accordingly, he filed a grievance. That grievance proceeded to *821 arbitration. Several extended sessions were held before the arbitrator.
Ultimately the arbitrator rendered a tome-like decision of 84 pages. The decision was nonetheless detailed and comprehensive although enshrouded to some degree with the mantle of academe — a comment not a criticism. The decision was in favor of Officer Turner. It ordered the City of Salamanca to reinstate him without loss of benefits or seniority. It further ordered the City of Salamanca to pay Officer Turner the amount of salary lost less any sums received from other employment.
The City of Salamanca, by appropriate motion, moved to have the award of the arbitrator vacated. The union on behalf of Officer Turner moved to have the award confirmed.
The initial determination which must be made in this proceeding is whether or not this court may intervene in a matter which has been determined by arbitration.
Appellate determinations of recent vintage have repeatedly lauded the purposes of arbitration and have indicated a clear judicial policy in favor of non-judicial intervention.
In Matter of Sprinzen (Nomberg) (46 NY2d 623 [1979, Jasen, J.]), our Court of Appeals held that while intervention by the courts was extremely limited, it was permitted on the grounds of public policy. Before a court engages in intervention on the grounds of public policy it "must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement.” (See, 46 NY2d 623, 631.)
Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist. (45 NY2d 898 [1978 Per Curiam]) provides further insight into the limited times when judicial intervention in arbitration under consideration of public policy is appropriate. There the court stated the test to be as follows: "Only when the award contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility, may it be set aside. ” (See, 45 NY2d 898, 899; italics added.)
The respondent, City of Salamanca, urges that the instant proceeding falls within the public policy exception to the general rule against non-judicial intervention in arbitration matters. This court agrees.
Clearly involved in this proceeding are constitutional provi *822 sions, viz., the provisions of NY Constitution, article V, § 6. The provision of that section states that appointments and promotions in the civil service "shall be made according to merit and fitness” to be ascertained as far as practicable by competitive examination, with certain special provisions not here applicable concerning veterans.
It is equally clear that there is involved in this proceeding certain statutory provisions, viz., the provision of Civil Service Law § 50 (4). That statute provides, inter alia, that the State Civil Service Department and municipal commissions may refuse after examination to certify an eligible who is found to have a physical or mental disability which renders him unfit for the performance of the duties of the position in which he seeks employment, or which may reasonably be expected to render him unfit to continue to perform the duties of such position. (See, Civil Service Law § 50 [4] [b].)
Section 50 (4) (g) further provides that the Commission may refuse certification of an employee "who has practiced or attempted to practice, any deception or fraud in his application, in his examination, or in securing his eligibility or appointment”.
The same statute, viz., Civil Service Law § 50 in subdivision (4) provides that the Civil Service Department or appropriate municipal commission "may investigate the qualifications and background of an eligible after he has been appointed from the list, and upon finding facts which if known prior to appointment, would have warranted his disqualification, or upon a finding of illegality, irregularity or fraud of a substantial nature in his application, examination or appointment, may revoke such eligible’s certification and appointment and direct that his employment be terminated” (italics added). Except in the case of fraud the statute provides for a three-year period of limitation on revocation, an exception not applicable in the instant proceeding.
Two other statutory provisions are involved in the instant proceeding. They are Civil Service Law §§ 100 and 101.
Civil Service Law § 100 prohibits any disbursing or auditing officer from approving any pay or compensation for personal service to any person unless such person is certified by the Civil Service Department or municipal commission as being employed in accordance with law and rules made pursuant to law.
Civil Service Law § 101 provides that any officer who will *823 fully pays or authorizes payment to any person under civil service with knowledge that the Civil Service Department or municipal commission has refused to certify the payroll of that person is guilty of a misdemeanor.
Having determined that constitutional provisions as well as statutory provisions are clearly involved in the proceeding at bar, the court looks now at the further test for judicial intervention in arbitration matters on the grounds of public policy, to wit: that such constitutional provisions and statutes evidence a "strong public policy” and relate to important constitutional and statutory duties. (See, test stated in Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899, supra.)
In commenting upon the provisions of the New York Constitution referable to civil service appointment and implementing statutory provisions which we have noted our Court of Appeals stated in reference to them the following: "The principle that all appointments in the civil service must be made according to merit and fitness, to be ascertained by competitive examination, is expressed in such broad and imperative language that in some respects it must be regarded as beyond the control of the legislature, and secure from any mere statutory changes. If the legislature should repeal all the statutes and regulations on the subject of appointments in the civil service the mandate of the Constitution would still remain, and would so far execute itself as to require the courts, in a proper case, to pronounce appointments made without compliance with its requirements illegal.” (People ex rel. Mc-Clelland v Roberts, 148 NY 360, 366 [1896]; accord, Amico v Erie County Legislature, 36 AD2d 415, 424 [4th Dept 1971, Marsh, J.].)
It is difficult to envision a statement more positive of the strong public policy that attends appointment in the civil service and the obligation of the courts to safeguard the provisions of law which apply thereto.
This court holds first that there is a strong public policy referable to appointment in the civil service and that such public policy is borne out of important constitutional and statutory enactments which impose heavy responsibility on the courts of this State.
The court holds that such strong public policy in the area of appointment to the State civil service imposes a proper restriction on the freedom to arbitrate. (Matter of Susquehanna *824 Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617, stating "[p]ublic policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate”; City of New York v Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO, 58 NY2d 957, 959, involving "a public policy which is beyond waiver”; accord, Matter of Sprinzen [Nomberg] 46 NY2d 623, 630, 631, supra; Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist, 38 NY2d 137, 143; Matter of Ford v Civil Serv. Employees Assn., 94 AD2d 262 [1st Dept 1983], wherein an arbitrator made an initial award in violation of a public policy which was held to be beyond waiver.)
Having made the case that the matter of appointment to the State civil service which is here involved falls within a recognized exception to the principle of non-judicial intervention in arbitration matters, there remains only the need to answer the argument of the arbitrator and of the union (Local No. 805-CSEA/AFSCME, City of Salamanca police unit). That argument is that the collective bargaining agreement between the petitioner and respondent providing as it did for arbitration gave the arbitrator complete and unbridled jurisdiction to decide a matter submitted pursuant to that agreement and to fashion a result which the arbitrator deemed appropriate.
The answer in the case at bar is precisely the same as that given by the First Department in Matter of Ford v Civil Serv. Employees Assn. (94 AD2d 262 [1st Dept 1983, Carro, J.], supra). The argument is circular in that it avoids the very point which this court has made, namely, that the arbitrator exceeded his power and made an initial award in violation of a public policy which was and is beyond waiver. (See, 94 AD2d, at p 266.) This is for the reason that the Constitution and the statutes require that the decision on qualification to the civil service must be made by the Civil Service Commission.
Here, the arbitrator passed upon the merit and fitness of a candidate for continuance of employment in the State civil service. He did it in an arbitration proceeding under a collective bargaining agreement. For the reasons stated that was error.
That initial error in undertaking the issue in arbitration was aggravated by further error in the arbitrator’s decision that the City of Salamanca must pay the candidate employee *825 a salary for the position of a policeman without an appropriate certificate from the Civil Service Commission that the candidate employee is employed in accordance with the law and the rules of the Civil Service Commission. Such decision places the City of Salamanca in a position where it is ordered and directed by the arbitrator to commit an illegal act. As noted, it is a misdemeanor for anyone "to wilfully pay or authorize the payment” without such certificate. (See, Civil Service Law § 101.)
The arbitrator argues in his decision that since payment of salary by the city would be made pursuant to his decision, that such payment would not be "willful” and thus not a criminal act. In the opinion of the court it would serve no useful purpose to engage in an argument of semantics with the arbitrator. It is sufficient to note that as long ago as 1896 our Court of Appeals held on constitutional and statutory considerations concerning civil service that it was illegal to pay an employee in the Department of Public Works a salary in a situation wherein the Civil Service Commission had refused to issue the required certificate. (People ex rel. Mc-Clelland v Roberts, 148 NY 360 [1896, O’Brien, J.], supra.) The noted case has not been overruled. The holding made there is applicable today and to the case at bar.
Both the Constitution of the State and the provisions of the Civil Service Law declare in unmistakeable terms of clarity that the qualifications for positions in the civil service are the particular, peculiar and exclusive province of the Civil Service Commission. The arbitrator failed to grasp this overriding consideration or grasping it refused to give it application.
The decision of the arbitrator also reveals that he failed to comprehend that such constitutional and statutory provisions referable to the civil service "were intended as a protection for the public and all the employees in the civil service as well as security for the individual employee.” (Wood v City of New York, 274 NY 155, 161 [1937, Crane, Ch. J.].) It was the interest of the public and the obligation of the courts to supervise that interest that held arbitration improper in Matter of Aimcee Wholesale Corp. (Thomar Prods) (21 NY2d 621 [1968, Keating, J.]) referable to antitrust violations (see in particular p 627); and in Agur v Agur (32 AD2d 16 [2d Dept 1969, Hopkins, J.]) referable to custody of children (see in particular p 19); see also, Wilko v Swan (346 US 427) referable to claims under Securities Act of 1933; Koven & Brother v Local Union No. 5767, United Steel Workers (381 F2d 196) *826 referable to discharge in bankruptcy; and American Safety Equip. Corp. v Maguire & Co. (391 F2d 821 [2d Cir]) referable to Federal antitrust claims. In the opinion of this court the interest of the public in the civil service and the obligation of the courts to safeguard that interest brings the instant case within the parameters of the above decisions.
The Fourth Department, Appellate Division, has stated of the constitutional provisions referable to civil service, "[n]o administrative officer may violate the provisions of the Constitution, and no court may sanction a violation.” (Amico v Erie County Legislature, 36 AD2d 415, 424 [4th Dept 1971, Marsh, J.], supra.)
To permit the arbitrator to proceed with the matter in issue would be to permit the collective bargaining agreement to arbitrate to destroy the very master it serves. The consequence of such action would be not one statement of qualifications for civil service employment as a policeman but rather as many differing qualifications as there are arbitrators’ decisions.
The difficulty throughout this entire case is the absence of the Civil Service Commission as a party to any proceeding. It may well be that such Commission was not a proper party to the arbitration proceeding nor upon this motion. Nonetheless, the legality of the initial appointment of the employee to the civil service together with the legality of reviewing the qualifications of the employee after initial appointment for his continuance as an employee in the civil service as well as the refusal of the Civil Service Commission to certify such employee for payroll purposes must all be resolved first before arbitration is permitted under the collective bargaining agreement. Those issues of dispute between the employee and the Civil Service Commission cannot be resolved collaterally in an arbitration proceeding involving only the employee and his employer. Procedural remedies in the nature of mandamus under CPLR article 78 are available for the resolution of these matters. (See, Matter of Kaney v New York State Civ. Serv. Commn., 190 Misc 944, affd 273 App Div 1054, affd 298 NY 707.)
Motion that the decision of the arbitrator be vacated and set aside is granted.
Cross motion that the award of the arbitrator be confirmed is denied.