CABRINI MEDICAL
CENTER, Plaintiff,

v.

LOCAL 1199, DRUG, HOSPITAL AND HEALTH CARE EMPLOYEES UNION, RWSDU, AFL–CIO, Defendant.

LOCAL 1199, DRUG, HOSPITAL AND HEALTH CARE EMPLOYEES UNION, RWSDU, AFL–CIO, Plaintiff,

v.

CABRINI MEDICAL
CENTER, Defendant.

Nos. 87 Civ. 7588 (CSH), 87 Civ. 7786 (CSH).

United States District Court,
S.D. New York.

Feb. 27, 1990.

Simpson Thacher & Bartlett, New York City, for Cabrini Medical Center; Ernest J. Collazo, of counsel.

Eisner & Levy, P.C., New York City, for Local 1199, Drug Hosp. and Health Care Employees Union, RWSDU, AFL–CIO; Daniel J. Ratner and Mitra Behroozi, of counsel.

HAIGHT, District Judge:

These are cross-motions for summary judgment to vacate and to confirm an arbitrator's award directing a hospital to reinstate without back pay an employee discharged for alleged abuse of a patient. The hospital seeks vacatur on both statutory and public policy grounds.

## BACKGROUND

In February 1984 Innis Achong was hired as a nursing attendant at the Cabrini Medical Center (hereinafter the "Hospital"). He is a member of Local 1199, Drug, Hospital and Health Care Employees Union, RWSDU, AFL–CIO (the "Union"), which entered into a collective bargaining agreement with the Hospital. Achong had an unblemished record of performance until November 4, 1986, when the underlying incident occurred.

It is common ground that on that date, while Achong walked by a stretcher on which lay a disoriented and distraught female patient, the patient kicked Achong in the back. It is also common ground that Achong responded to the patient's kick physically and verbally. The parties dispute the nature of Achong's responses. The case for the Hospital is that after the patient kicked Achong, Achong cursed at her and struck her on the leg. The case for Achong is that he gently placed the patient's leg back on the stretcher and with equal gentleness admonished her not to kick him.

On November 10, 1986, the Hospital discharged Achong for striking and cursing at the patient.

The collective bargaining agreement provides in Article XXIX that "[t]he Employer shall have the right to discharge, suspend, or discipline any employee for cause." The agreement does not undertake to define "cause." It provides that where the Hospital and Union disagree on whether an employee was discharged for just cause, the dispute will be resolved by an arbitrator whose award "shall be final, conclusive and

binding upon the Employer, the Union and the Employee." Article XXXII.

The dispute concerning the circumstances surrounding Achong's discharge came before an arbitrator, Daniel F. Brent, selected in accordance with the procedures of the American Arbitration Association as provided in the collective bargaining agreement. The parties submitted the following specific issues to the arbitrator:

Was there just cause for the discharge of Innis Achong? If not, what shall be the remedy?

The arbitrator conducted a hearing at which witnesses including Achong (but not the patient) testified in support of the varying versions of events. The arbitrator then issued a written award concluding that just cause did not exist for Achong's discharge; and that the proper remedy was reinstatement without back pay (amounting to a nine-month suspension without pay) and a warning against future conduct.

In view of the parties' differing perceptions of what the arbitrator did and why he did it, it is useful to quote his award at some length. As to the conflicting accounts, the arbitrator summarized the evidence and then said:

The Hospital has established persuasively that an incident occurred and that it more closely resembled the version offered by the Hospital's chief witness than the version offered by the grievant. Award at 6.

The arbitrator then said this:

The Hospital clearly has a valid interest in preventing patient abuse, not only because of the obvious breach of the Hospital's duty of care to its patients, but also because of the deleterious effect on the Hospital's reputation. The potential liability incurred when employees breach their duty of care to the patients with whose well being they are entrusted justifies the imposition of serious discipline. Professional health care employees, such as the grievant, must exercise self-restraint, even if caught off guard by an unprovoked attack. When credible evidence establishes persuasively that a physical attack on a patient has occurred,

the harshest penalty, summary discharge, is warranted.

However, a serious flaw exists in the Hospital's case, because the Hospital was unable to establish exactly how hard the grievant allegedly slapped the patient's leg. Inasmuch as the grievant admitted having touched the leg in order to return it to the stretcher, the degree of force becomes material in proving patient abuse sufficient to discharge summarily an employee with an otherwise unblemished record. Although the degree of force used by the grievant was such that the complaining employee immediately broached the matter with the grievant and soon thereafter reported the incident to a supervisor, in order to sustain a summary discharge the Hospital must establish clearly and convincingly that the grievant struck the patient rather than grabbed or reached out quickly towards her leg to deflect another possible kick.

The grievant's conduct was not heinous, nor can it be unambiguously be characterized as severe abuse. Nevertheless, the Hospital cannot reasonably be expected to condone such conduct, and the grievant knew or should have known that such a lapse, however momentary, would subject him to the imposition to severe discipline, up to and including discharge.

It was the clear thrust of the credible evidence that the grievant did verbally abuse and touch a patient in an unprofessional manner in the Emergency Room on November 4, 1986. However, the momentary nature of the incident and the inconclusive testimony as to the degree of force of the touching render the penalty of summary discharge unduly harsh. Award at 7–9.

In these circumstances, the arbitrator made the following award.

Consequently, there was not just cause for the discharge of Innis Achong. The grievant shall be reinstated forthwith to his former position with uninterrupted seniority, but without back pay. In the event the grievant commits any future

act of abuse against a patient, the penalty assessed in the instant case should be given great weight in imposing discipline for any such future infraction.

Award at 9.

The Hospital commenced an action in this Court to set aside and vacate the award. Federal jurisdiction derives from the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The Union commenced an action in the Supreme Court of the State of New York, County of New York, for an order and judgment confirming the award. The Hospital removed that action to this Court. The two actions were consolidated for all purposes. The parties now cross-move for summary judgment.

## DISCUSSION

The Hospital asserts two grounds for vacating the award. First, it argues that the award violates public policy declared in a New York statute protecting hospital patients from abuse. Second, the Hospital contends that the arbitrator exceeded his authority under the collective bargaining agreement and the parties' submission of disputes.

If the Hospital is correct that the arbitrator exceeded his powers, that is a sufficient bases for vacatur, and I need not reach the broader issue of public policy. Accordingly I first consider that contention, which arises out of the statutory grounds for setting aside arbitration awards.

*Statutory Grounds*

■ The Federal Arbitration Act, 9 U.S.C. § 9, provides that a court "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as proscribed in sections 10 and 11 of this title." Section 10 contains the grounds for vacating an award. The full text appears in the margin.[1] In the case at bar the Hospital must bring itself within § 10(d), which provides for vacatur:

> Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Only the first phrase of this provision is arguably applicable.

■ But there is no substance to the Hospital's argument. An arbitrator's powers are derived generally from the parties' contractual agreement to arbitrate, and particularly from the parties' written submission of issues. The collective bargaining agreement entitles the Hospital to discharge a Union member for "cause", but nowhere undertakes to define circumstances constituting cause. The Hospital in its negotiations with the Union might have attempted to secure a more precise definition—for example, in the sensitive area of patient care—but it did not do so. Instead the parties agreed that arbitration would resolve whether or not a particular employee was discharged for just cause. The parties further agreed that if the arbitrator answered that question in the negative, the arbitrator would determine the wrongfully discharged employee's appropriate remedy. Those are precisely the issues the parties submitted to Arbitrator Brent in the case at bar.

The Hospital argues, in a series of Points from whose captions I quote, that the arbi-

1. 9 U.S.C. § 10 provides:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (a) Where the award was procured by corruption, fraud, or undue means.
>
> (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in re-

> fusing to hear evidence pertinent and material to the controversy; or to any other misbehavior by which the rights of any party have been prejudiced.
>
> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> (e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

trator exceeded his authority "by disregarding his own finding of facts in granting his award"; "by deciding the question of penalty after finding just cause for [Achong's] discharge"; and "by denying the hospital's right to discharge [Achong] after finding [Achong's] conduct constituted just cause for discharge." These are all variations on the same flawed theme.

The parties' briefs quote those passages from the award most favorable to their respective arguments. But the Hospital, in order to make its arguments, is required to isolate comments made by the arbitrator and disregard the general context. It is for example idle for the Hospital to argue that the arbitrator exceeded his powers "by deciding the question of penalty after finding just cause for Achong's discharge." The arbitrator specifically found that "there was not just cause for the discharge of Innis Achong." Award at 9.

The fact is that the arbitrator, while describing Achong's conduct as abusive toward a patient (although specifically declining to brand his conduct as "severe abuse"), went on to consider other mitigating factors and concluded that discharge was not the appropriate remedy. One New York court has upheld an arbitrator's authority to engage in precisely the same analysis and arrive at precisely the same conclusion in a case of discharge for patient abuse. *Grace Plaza of Great Neck, Inc. v. Turner*, 130 A.D.2d 746, 515 N.Y. S.2d 842 (2nd Dept.1987). As for federal law, the Supreme Court and the circuit courts of appeals have traditionally limited attacks upon arbitrators' awards, thereby manifesting federal public policy in favor of arbitration. A recent statement appears in *United Paper Workers International Union AFL–CIO v. Misco, Inc.* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987):

> ... the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and

acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

There is no substance to the Hospital's contention, however variously stated, that the arbitrator exceeded his authority under the collective bargaining agreement or the submission of disputes.

*Public Policy Grounds*

■ Alternatively the Hospital attacks the award as contrary to New York's statutorily expressed public policy that "[e]very patient shall be free from mental and physical abuse...." N.Y. Public Health Law § 2803–c(3)(h).

■ Federal law recognizes contravention of public policy as a basis for vacating an arbitration award. In *Misco, supra*, the Court said generally at 484 U.S. 42, at 108 S.Ct. 373:

> A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy.

But the doctrine is a limited one. In *Misco* the Court did not need to address that most narrow of concepts urged by the union "that a court may refuse to enforce an award on public policy grounds only when the award itself violates a statute, regulation, or other manifestation of positive law, or compels conduct by the employer that would violate such a law." *Id.* at 45 n. 11, 108 S.Ct. at 374 n. 11. However, the Court did say:

> ... a court's refusal to enforce an arbitrator's *interpretation* of such contracts is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' "

*Id.* at 43, 108 S.Ct. at 373 (emphasis in original) (quoting *W.R. Grace & Co. v.*

*Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983).

In *Misco* an employee was discharged and issues identical to those at bar submitted to an arbitrator under a collective bargaining agreement, namely, "whether the company had 'just cause' to discharge the [employee]" and, "[i]f not, what if any should be the remedy." 484 U.S. at 33–34, 108 S.Ct. at 368. After a hearing the arbitrator found that the employee was "apprehended on company premises in an atmosphere of marijuana in another's car and that marijuana was found in his own car on the company's lot." *Id.* at 35, 108 S.Ct. at 369. While the employer argued that this conduct violated its rules against employees bringing narcotics on to plant property or consuming them there, thereby justifying discharge, the arbitrator "refused to accept into evidence the fact that marijuana had been found in [the employee's] car on company premises because the company did not know of this fact when [the employee] was discharged and therefore did not rely on it as a basis for the discharge." *Id.* at 34, 108 S.Ct. at 369 (footnote omitted). The arbitrator in his award ordered the employer to reinstate the employee with backpay and full seniority.

The district court and the Fifth Circuit vacated the award on the ground that "to reinstate a person who had brought drugs onto the property was contrary to the public policy 'against the operation of dangerous machinery by persons under the influence of drugs or alcohol.'" *Id.* at 42, 108 S.Ct. at 373, quoting the court of appeals' majority opinion, 768 F.2d 739 at 743. The Supreme Court reversed and enforced the award. It held that the court of appeals failed to review existing laws or legal precedents to demonstrate that they established a "well-defined and dominant" policy against the operation of dangerous machinery while under the influence of drugs. As an alternative ground, the Court held that the lower court's inference from the arbitrator's findings that the employee actually used drugs in the work place was "tenuous at best" and in any event was for the arbitrator to draw. *Id.* at 44, 108 S.Ct. at 374. The court's conclusion emphasizes the narrow limits of the public policy ground for vacatur:

> Had the arbitrator found that [the employee] had possessed drugs on the property, yet imposed discipline short of discharge because he found as a factual matter that [the employee] could be trusted not to use them on the job, the Court of Appeals could not upset the award because of its own view that public policy about plant safety was threatened.

*Id.* at 45, 108 S.Ct. at 374 (footnote omitted).

Following *Misco* the public policy exception to enforcement of arbitration awards came before the Eighth Circuit in *Iowa Electric Light and Power Company v. Electrical Workers Local 204,* 834 F.2d 1424 (8th Cir.1987). The worksite in *Iowa Electric Light and Power* was a nuclear power plant. The Company discharged an employee who worked in the machine shop. The shop was "within the plant's secondary containment area—a buffer zone designed to arrest the spread of any radiation that might escape from the primary containment area at the core of the reactor." 834 F.2d at 1425. A series of interlock doors were designed to maintain pressure to insure that any leakage remained inside the plant. The discharged employee, desiring to leave early for lunch, "deliberately defied the control room engineer, defeated the interlock system, and flouted federally mandated safety regulations." *Id.* at 1426. The employee's union grieved the discharge. The arbitrator ordered reinstatement. The Eighth Circuit vacated the award on public policy grounds. The court regarded its decision as "in keeping with the line of cases vacating arbitrators' awards that direct the reinstatement of employees whose deliberate acts have jeopardized public health or safety." *Id.* at 1428. The Eighth Circuit distinguished *Misco* on the ground that the safety rules involved in that case were "designed to protect employees inside the paper converting plant" while the safety rules the employee violated at Iowa Electric were designed to protect not only employees, but

also the general public." *Id.* at 1427 n. 2. Addressing the question left open by the Supreme Court in *Misco*, the Eighth Circuit held it was "not required to find that the award itself is illegal before we overrule the arbitrator on public policy grounds." *Id.* at 1427 n. 3.

The New York rule is that "the court will not intervene in the arbitration process for reasons of public policy unless the policy 'prohibit[s] in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator.'" *Grace Plaza of Great Neck, Inc. v. Turner, supra,* at 515 N.Y.S.2d 843, citing and quoting *Matter of Town of Haverstraw [Rockland County Patrolman's Benevolent Assn.],* 65 N.Y.2d 677, 678, 491 N.Y.S.2d 616, 481 N.E.2d 248 (1985). *See also Board of Education of the Mount Sinai Union Free School District v. Mount Sinai Teachers Association,* 139 A.D.2d 733, 527 N.Y.S.2d 484 (2nd Dept.1988). Arguably these cases apply the more stringent standard whose validity the Supreme Court did not reach in *Misco* and the Eighth Circuit rejected in *Iowa Electric Light.* The parties have not cited and I have not found Second Circuit authority on the point.

■ Assuming for the discussion that the federal and New York standards are different, with the former giving courts somewhat more latitude in overturning arbitration awards on the ground of public policy, this court is required to apply the federal standards. Nonetheless I reject the contention in the case at bar.

New York public policy declared in the public health law is that patients "shall be free from mental and physical abuse." No one would quarrel with that salutary policy, but it is stated in general terms. The statute does not undertake to define "abuse." Whether acts or words constitute mental or physical abuse, as well as its degree of severity, are issues of legitimate dispute. This broadly stated state policy contrasts with the precise safety regulation involved in *Iowa Electric Light,* which said in substance: "Do not open this door." *Misco* requires that public policy sufficient to vacate an arbitration award must be

*both* "well defined and dominant." It is difficult to conclude that New York's policy declaration against "abuse" of patients satisfies the first of these requirements.

Indeed, the disputed issues of abuse and its severity were squarely placed before the arbitrator in the parties' submission agreement. As noted, the arbitrator did not fully accept either party's version of the facts. He found that Achong "did verbally abuse and touch a patient in an unprofessional manner", but stressed the Hospital's inability "to establish exactly how hard" the touching was, and regarded summary discharge as "unduly harsh" because of "the momentary nature of the incident and the inclusive testimony as to the degree of force of the touching ..." If careful and detailed findings and conclusions such as these may be set aside as violative of the state's general prohibition of patient abuse, a significant area of potential disputes is withdrawn from the collective bargaining agreement's provision that disputed discharges for "cause" be resolved by arbitration. But the thwarting or narrowing of broadly drawn contractual agreements to arbitrate implicate public policy problems of their own.

In *Grace Plaza of Great Neck, Inc. v. Turner, supra,* the Second Department rejected the same public policy argument based on patient abuse in affirming an arbitrator's award indistinguishable in principle from that at bar. That result is clearly correct, whether federal or state concepts of the public policy exception apply, assuming there is a difference between the two.

Of course it does not follow from the result reached in *Grace Plaza* or in the case at bar that arbitrators may consistent with public policy direct reinstatement of employees guilty of proven serious abuse. The *Grace Plaza* court distinguished *Matter of Ford v. Civil Service Employees Assn.,* 94 A.D.2d 262, 464 N.Y.S.2d 481 (1st Dept.1983), *appeal dismissed,* 62 N.Y.2d 799, 477 N.Y.S.2d 331, 465 N.E.2d 1267 (1984), where the court vacated an arbitration award reinstating a mental hygiene therapy aid who had sexually abused a

female patient. But the case at bar is quite different, and I cannot conclude that the arbitrator's award was so against the public policy of the state as to require vacatur.

For the foregoing reasons, the Hospital's motion for summary judgment vacating the award is denied and the Union's cross-motion for summary judgment confirming the award is granted.

Settle Order and Judgment on five (5) days' notice.

It is SO ORDERED.