OPINION OF THE COURT
Jasen, J.
This appeal requires us to determine whether an arbitrator’s award which enforces the terms of a restrictive covenant of employment is unenforceable as being contrary to public policy.
Respondent Murray Nomberg was employed by the petitioner Local 1115 Joint Board in April, 1973 as a business agent in its health-care division. Nomberg’s responsibilities *627 included, among other tasks, the negotiation of collective bargaining agreements, the processing of members’ grievances, and the general organization of employees at various facilities. Practically all of Nomberg’s service occurred in New Jersey, although he did, on occasion, work in Connecticut and Pennsylvania.
Upon commencement of his employment with Local 1115 in April, 1973, Nomberg signed an agreement which contained a restrictive covenant. The terms of such covenant provided for a perpetual prohibition against the divulgence of the identity and addresses of union members or the terms and conditions embodied in the union agreements or the revelation of any information obtained by Nomberg during the course of his employment. Further, Nomberg agreed that "[u]pon the termination of his employment * * * he shall not directly or indirectly, within the States of New York, Pennsylvania, New Jersey and Connecticut * * * enter into or engage in organizing workers, either as an individual or as a part of a labor organization, for a period of five (5) years after the date of termination of his employment hereunder.” The agreement also contained a sweeping arbitration clause which prescribed that "[a]ll complaints, disputes whatsoever of whatever kind or nature * * * concerning any provision of this contract * * * or otherwise * * * shall be submitted for arbitration” pursuant to a clearly delineated process.[1]
In February, 1976, Nomberg left Local 1115 and began employment as a business representative for Local 144 of the Hotel, Hospital, Nursing Home and Allied Services Union, a union also involved in organizing and representing employees in the health-care field. With Local 144, Nomberg’s geographical responsibilities included only Manhattan and Staten Island, areas with which he had no previous dealings.
Petitioner Local 1115 demanded arbitration to compel compliance with the terms of the restrictive covenant and to enjoin Nomberg from employment as a business representative for Local 144. The parties proceeded to arbitration, where Nomberg, after unsuccessfully contesting the partiality of the arbitrator named in the April, 1973 agreement, walked out of the hearing, refusing to participate further. After petitioner presented its case, the arbitrator ruled that Local 1115 was *628 entitled to the relief sought and issued an award enjoining Nomberg from working for Local 144 until February 6, 1981, five years after his employment ceased with Local 1115, and further restrained Nomberg from engaging in any of the other practices and acts specifically prohibited by the restrictive covenant.
Petitioner moved to confirm the arbitrator’s award, and Nomberg cross-moved to vacate the same, contending that his rights were prejudiced by the arbitrator’s partiality and that the award itself was unjust. Special Term confirmed the award and denied Nomberg’s cross motion in all respects. On appeal, the Appellate Division, with two Justices dissenting, reversed and vacated the award, holding that "the arbitration award under the circumstances of this case [is] in contravention of public policy”. There should be a reversal and the judgment of Special Term confirming the award of the arbitrator reinstated.
Controversies involving questions of public policy can rarely, if ever, be resolved by the blind application of sedentary legal principles. The very nature of the concept of public policy itself militates against any attempt to define its ingredients in a manner which would allow one to become complacent in the thought that those precepts which society so steadfastly embraces today will continue to serve as the foundation upon which society will function tomorrow. Public policy, like society, is continually evolving and those entrusted with its implementation must respond to its everchanging demands.
Over the years, courts have had not infrequent occasion to test restrictive covenants against the fabric of prevailing public policy. While it has been consistently asserted that the policy considerations against depriving the public of a person’s industry and precluding an individual from pursuing his occupation, thereby preventing him from supporting himself and his family, must be weighed against the enforcement of such covenants (see, e.g., Oregon Steam Nav. Co. v Winsor, 87 US 64, 68; Purchasing Assoc. v Weitz, 13 NY2d 267, 272), no hard-and-fast rules have yet been formulated and courts have been continuously engaged in the ongoing task of determining what restrictions are reasonable given the peculiar circumstances and context of each individual case. (See, e.g., Columbia Ribbon & Carbon Mfg. Co. v A-l-A Corp., 42 NY2d 496; Gelder Med. Group v Webber, 41 NY2d 680; Reed, Roberts *629 Assoc. v Strauman, 40 NY2d 303, mot for rearg den 40 NY2d 918; Purchasing Assoc. v Weitz, 13 NY2d 267, supra.) Thus, it can be said with apparent certainty that cases involving restrictive covenants cannot be decided in a vacuum free from external influences. Courts must respond to each case as it presents itself, and often times, as in the present case, must resolve seemingly divergent considerations of public policy.
The issue presented in this case comes to us in an increasingly recurrent posture — to wit: the review of a judgment confirming an arbitrator’s award. An agreement to submit to arbitration disputes arising out of a contract, once condemned by the judiciary of this State as tending to oust the courts of their jurisdiction and, thus, declared void as contrary to settled policy (see Meacham v Jamestown, Franklin & Clearfield R. R. Co., 211 NY 346), is now favorably recognized as an efficacious procedure whereby parties can select their own nonjudicial forum for the “private and practical” resolution of their disputes “with maximum dispatch and at minimum expense.” (Matter of Siegel [Lewis], 40 NY2d 687, 689, mot for rearg den 41 NY2d 901; see, generally, Siegel, New York Practice, § 586.)
In furtherance of the laudable purposes served by permitting consenting parties to submit controversies to arbitration, the law has adopted a policy of noninterference, with few exceptions, in this mode of dispute resolution. Quite simply, it can be said that the arbitrator is not bound to abide by, absent a contrary provision in the arbitration agreement, those principles of substantive law or rules of procedure which govern the traditional litigation process. (E.g., Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235; Lentine v Fundaro, 29 NY2d 382, 385.) An arbitrator’s paramount responsibility is to reach an equitable result, and the courts will not assume the role of overseers to mold the award to conform to their sense of justice. Thus, an arbitrator’s award will not be vacated for errors of law and fact committed by the arbitrator (Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 582; Garrity v Lyle Stuart, Inc., 40 NY2d 354, 356-357; Matter of Raisler Corp. [N. Y. City Housing Auth.], 32 NY2d 274, 282, citing Matter of S & W Fine Foods [Office Employees Int. Union], 8 AD2d 130, 131, affd 7 NY2d 1018), and ”[e]ven where the arbitrator states an intention to apply a law, and then misapplies it, the award will not be set aside (Matter of Schine Enterprises *630 [Real Estate Portfolio of N. Y.], 26 NY2d 799, 801).” (Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235, supra.)
Despite this policy of according an arbitrator seemingly unfettered discretion in matters submitted to him by the consent of the parties, it is the established law in this State that an award which is violative of public policy will not be permitted to stand. (Garrity v Lyle Stuart, Inc., 40 NY2d 354, 357, supra.) The courts, however, must exercise due restraint in this regard, for the preservation of the arbitration process and the policy of allowing parties to choose a nonjudicial forum, embedded in freedom to contract principles, must not be disturbed by courts, acting under the guise of public policy, wishing to decide the dispute on its merits, for arguably every controversy has at its core some issue requiring the application, or weighing, of policy considerations. Thus, there are now but a few matters of concern which have been recognized as so intertwined with overriding public policy considerations as to either place them beyond the bounds of the arbitration process itself or mandate the vacatur of awards which do violence to the principles upon which such matters rest. (See Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899.)
Some examples would be instructive. It has been held that an arbitrator is without power to award punitive damages, a sanction reserved solely to the State (Garrity v Lyle Stuart, Inc., 40 NY2d 354, supra; Matter of Publishers’ Assn. of N. Y. City [Newspaper Union], 280 App Div 500), and that an agreement to arbitrate, when sought to be enforced by a lender, cannot divest the courts of their responsibility to determine whether a purported sales agreement is in fact a usurious loan, and thus illegal. (Compare Durst v Abrash, 22 AD2d 39, 44, affd 17 NY2d 445, with Rosenblum v Steiner, 43 NY2d 896, 898.) Matters involving the enforcement of our State’s antitrust laws, recognized as representing "public policy of the first magnitude”, cannot be left to commercial arbitration (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 625), and claims concerning the liquidation of insolvent insurance companies have been held to be beyond the reach of an arbitrator’s discretion where a State statute bestows upon the Supreme Court exclusive jurisdiction over these proceedings. (Matter of Knickerbocker Agency [Holz], 4 NY2d 245.)
*631 In public school matters, it has been held that agreements which purportedly reflect a bargain by a board of education not to inspect teacher personnel files cannot be enforced through arbitration insofar as such right is supported by statute and public policy. (Board of Educ. v Areman, 41 NY2d 527.) Nor can a board of education surrender its authority to discharge a nontenured teacher at the end of his probationary period to the arbitration process pursuant to a collective bargaining agreement, and an award the terms of which would bestow upon a probationary teacher tenure, as distinguished from procedural guarantees, will be struck down as violative of public policy. (Compare Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, with Matter of Candor Cent. School Dist. [Candor Teachers Assn.], 42 NY2d 266.)
These illustrations of instances where courts will intervene in the arbitration process are, without apparent exception, cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement. This is so because, as has been previously noted, an arbitrator is free to apply his own sense of law and equity to the facts as he has found them to be in resolving a controversy.
Applying these principles to this case, we now hold that disputes involving restrictive covenants of employment can be, by mutual consent of the parties, submitted to arbitration, and an arbitrator’s award which specifically enforces such covenants, even to the extent of enjoining an individual from engaging in like employment for a reasonable period of years in the future, will not be vacated on public policy grounds.[2]
While it is true that considerations of public policy militate against the enforcement of restrictive covenants of future employment (see Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 499, supra), these covenants are not per se unenforceable as being null and void. (E.g., Gelder Med. Group v Webber, 41 NY2d 680, supra; see, generally, Purchas *632 ing Assoc. v Weitz, 13 NY2d 267, 272-273, supra, and cases cited therein.) Each case turns upon its own distinct facts. If the restrictive covenant is found, under all the circumstances, to be "reasonable in time and area, necessary to protect the employer’s legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee”, it will be subject to specific enforcement. (Reed, Roberts Assoc. v Strauman, 40 NY2d 303, 307, supra.)
Here, the parties, by reason of a broad arbitration clause contained in their signed agreement, submitted the issue of the enforceability of the restrictive covenant to arbitration, clearly a proper forum for the resolution of their dispute in this private matter. By so doing, the parties placed upon the arbitrator, not the courts, the responsibility of passing upon the merits of their controversy with the expectation that a just, yet practical, result would be reached. While there may be some doubt whether we would have enforced the restrictive covenant now before us had this dispute been adjudicated in the courts, such consideration is irrelevant to the disposition of this case, for courts will not second-guess the factual findings or the legal conclusions of the arbitrator. The utility of the arbitration process itself is derived from its autonomy, and courts must honor the choice of the parties to have their controversy decided within this framework. Insofar as public policy considerations do not absolutely preclude the enforcement of restrictive covenants of future employment for a reasonable period of time or related business concerns, we conclude that the arbitrator had the power to pass upon the issue of both the reasonableness and the necessity of the restrictions imposed upon the employee. Having thus concluded, and acknowledging the wide latitude afforded arbitrators in formulating just relief, the award rendered should not now be disturbed.
In passing, we reject respondent’s contention that the award must be vacated on the ground of the arbitrator’s alleged bias. (CPLR 7511, subd [b], par 1, cl [ii].) The arbitrator, known to respondent to have been designated by petitioner as an impartial arbitrator in various collective bargaining agreements between the union and certain employers, was expressly named in the April, 1973 agreement signed by the parties. The receipt of compensation from the union for his services is not sufficient to constitute bias. (See Matter of Siegel [Lewis], 40 NY2d 687, 689-690, supra.)
*633 Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, New York County, confirming the arbitrator’s award reinstated.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur with Judge Jasen.
Order reversed, etc.

. Initially, it should be noted that respondent does not now contend, nor could he, that this dispute is not arbitrable pursuant to the express terras of the agreement.

. This holding, of course, does not preclude the courts from vacating or modifying an arbitrator’s award upon those grounds set forth in CPLR 7511 (subds [b], [c]X