In the Matter of BOARD OF EDUCATION, YONKERS CITY SCHOOL DISTRICT, Respondent, v YONKERS FEDERATION OF TEACHERS, Appellant.

Second Department, March 2, 1990

**APPEARANCES OF COUNSEL**

*James R. Sandner (Mary E. Moriarty* of counsel), for appellant.

*Anderson, Banks, Moore, Curran & Hollis (James P. Drohan* and *Lawrence A. Thomas* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

■ On the present appeal, we are asked to resolve the question of whether an arbitrator's award directing the petitioner to comply with an agreement concerning the supervision of certain junior high school physical education classes impermissibly infringes upon its authority to determine school curriculum and the qualifications of teachers. We conclude that it does not.

The record demonstrates that the petitioner Board of Education, Yonkers City School District (hereinafter the Board) and the appellant entered into a "Settlement Agreement" in 1981 in order to resolve a grievance concerning the procedures to be followed when one or more physical education instructors were absent and teachers who were not certified in physical education were substituted for them. The substance of the agreement was as follows:

"1. If one teacher is absent, class dresses and goes to the designated area with non-certified P.E. sub for a recreational program outside of the gym.

"2. If two teachers are absent, on one side of the gym one class will go to the designated area for a recreational program and one class will remain on the empty side of the gym for a recreational program, or both classes may remain in the gym.

"3. If two teachers are absent, one on each side of the gym, one class will go to the designated area for a recreational program and one class will go to a media room (class doesn't dress) OR both classes may go to designated area or both classes may go to the media room.

"4. If three teachers are absent, Emergency situation, P.E. Department, will run an alternative program."

It is clear that the purpose of the agreement was to halt the Board's practice of effectively requiring certified physical education teachers, in addition to instructing their own classes, to supervise the instruction of other physical education classes when the instructors assigned to those classes were absent and teachers who were not certified to teach physical education were used as substitute instructors.

It is undisputed that the physical education department at Mark Twain Junior High School (hereinafter Mark Twain) in Yonkers operated according to the foregoing agreement until the commencement of the 1986-1987 school year. However, in November 1985 the United States District Court for the Southern District of New York found that the Board had intentionally segregated the Yonkers public schools (see, *United States v Yonkers Bd. of Educ.,* 624 F Supp 1276, *affd* 837 F2d 1181, *cert denied* 486 US 1055). Hence, on May 13, 1986, the District Court issued a sweeping remedial order which, *inter alia,* designated Mark Twain as an "Attendance Area Magnet School" which was to emphasize physical development commencing with the 1986-1987 school year *(United States v Yonkers Bd. of Educ.,* 635 F Supp 1538, *affd* 837 F2d 1181, *cert denied* 486 US 1055, *supra).* According to the Board, the purpose of this designation was to reduce racial segregation by attracting students from throughout the school district who had an interest in a specialized physical education and development program.

Thereafter, in the fall of 1986, the Board unilaterally reverted to its prior procedure of permitting teachers who were not certified to teach physical education to conduct physical education classes at Mark Twain when certified instructors were absent, with regular physical education teachers supervising the substitutes' classes as well as their own. The

appellant filed a grievance, and the matter went to arbitration. On May 12, 1988, the arbitrator issued an award finding that the Board's action violated the 1981 "Settlement Agreement" as well as certain provisions of the parties' collective bargaining agreement. Accordingly, the award directed the Board to comply with the "Settlement Agreement" until such time as the agreement was modified "through consultation and negotiations".

The Board thereupon commenced this proceeding pursuant to CPLR article 75 to vacate the arbitrator's award on the grounds that (1) it violated public policy by interfering with the Board's responsibility to determine teacher qualifications and matters of curriculum, and (2) it interfered with the Board's attempt to comply with the remedial desegregation order issued by the United States District Court. The Supreme Court, Westchester County, agreed with these contentions and vacated the award. We reverse.

It is well settled that "[w]here a dispute has been arbitrated pursuant to a broad arbitration agreement between the parties, the resulting award may not be vacated unless it is violative of a strong public policy, is totally irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*Matter of Town of Callicoon [Civil Serv. Employees Assn.]*, 70 NY2d 907, 909; *see, Matter of Board of Educ. v North Babylon Teachers' Org.*, 155 AD2d 599). However, while an award which is violative of a strong public policy will be vacated, the courts "must exercise due restraint in this regard, for the preservation of the arbitration process and the policy of allowing parties to choose a nonjudicial forum, embedded in freedom to contract principles, must not be disturbed by courts, acting under the guise of public policy, wishing to decide the dispute on its merits, for arguably every controversy has at its core some issue requiring the application, or weighing, of policy considerations" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 630).

Turning to the facts of the present case, we conclude that the arbitrator's award does not contravene a strong public policy. While strong policy considerations prohibit interference with the Board's duties to maintain adequate standards in the classroom and to determine the content and presentation of the curriculum and the qualifications of teachers (*see, Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.*, 49 NY2d 732; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774; *Matter of Monroe-*

*Woodbury Cent. School Dist. v Monroe-Woodbury Teachers Assn.,* 105 AD2d 786), "it has been recognized that there is no public policy prohibition against an agreement which establishes procedural guidelines regulating the assignment of teachers or other changes in policy, nor against enforcing such procedural guidelines through arbitration" *(Matter of Board of Educ. v Yonkers Fedn. of Teachers,* 129 AD2d 702, 703). Simply put, the arbitrator's award directing compliance with the 1981 "Settlement Agreement" does not interfere in any meaningful or substantive manner with the Board's responsibility to determine the physical education curriculum or the qualifications of the physical education teachers which it employs at Mark Twain. Indeed, under the agreement, the Board remains free to designate the curriculum and to exercise its authority, as set forth in the Commissioner's regulations, to employ teachers who are not certified to teach physical education as substitute instructors when regular physical education teachers are absent. Moreover, contrary to the Board's contention and the conclusion of the Supreme Court, the terms of the "Settlement Agreement" do not require the cancellation or discontinuance of physical education classes. The agreement merely establishes a procedure to be followed when physical education teachers are absent, whereby the Board may not require regular physical education teachers to supervise those classes to which noncertified substitutes are assigned. Accordingly, the arbitrator's award directing compliance with the "Settlement Agreement" and with the provision of the parties' collective bargaining agreement requiring the Board to consult and negotiate with respect to such matters affects procedural rather than substantive issues *(see, Matter of Board of Educ. v Yonkers Fedn. of Teachers,* 129 AD2d 702, *supra).* Any potential effect of the arbitrator's award upon the Board's nondelegable responsibilities to control the curriculum and the qualifications of teachers is so remote and tenuous as to be inconsequential under the circumstances of this case. Accordingly, the arbitrator's award does not concern any matter "so intertwined with overriding public policy considerations" as to warrant its vacatur *(Matter of Sprinzen [Nomberg],* 46 NY2d 623, 630, *supra).*

■ Additionally, we find that the award will not result in any significant interference with the remedial desegregation order of the United States District Court. The Board claims that compliance with the terms of the "Settlement Agree-

ment" may result in a lack of continuity in the physical education program at Mark Twain, thereby diminishing the program's ability to attract students. However, there is little likelihood that such a result will occur. The terms of the agreement only come into play when (1) a regular physical education instructor is absent, and (2) a teacher who is not certified in physical education is employed as a substitute by the Board. Moreover, as previously noted, the agreement does not require the cancellation of physical education classes under any circumstances. Rather, it merely calls for the relocation of classes in some limited situations and the use of an unspecified "alternative program" in the unlikely event that three regular physical education teachers are simultaneously absent. Hence, this argument is based on unrealistic assumptions and is unpersuasive. Indeed, the Board's own practice of employing teachers who are not certified to teach physical education as substitute instructors may well pose a greater risk of rendering the physical education program at Mark Twain unattractive to students.

Inasmuch as the arbitrator's award neither violates any strong public policy nor interferes with the Board's compliance with the Federal desegregation order, the judgment appealed from is reversed, the petition is denied, and the cross application to confirm the arbitrator's award is granted.

MOLLEN, P. J., EIBER and ROSENBLATT, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, the petition is denied, and the cross application to confirm the arbitrator's award is granted.