■ In the Matter of EDWARD SIMS, Respondent, v LEE SIEGELSON et al., Respondents, SAM KRISCHER, Appellant, and DIAMOND DEALERS CLUB, INC., Intervenor-Appellant. [668 NYS2d 20] —Judgment, Supreme Court, New York County (Jane Solomon, J.), entered June 26, 1995, which, to the extent appealed from, granted the petition to the extent of vacating an award made by an arbitration panel of respondent-intervenor-appellant Diamond Dealers Club (DDC) in favor of respondent Krischer and against petitioner in the amount of $37,371 and permanently enjoining DDC from enforcing that award, and denied Krischer's cross motion to dismiss the petition and confirm said award, unanimously reversed, on the law, with

costs, the petition denied and the cross motion to confirm the award granted, together with a 15% surcharge and interest. The Clerk is directed to enter judgment accordingly.

Petitioner Sims and respondent Krischer are both members of respondent DDC, an organization whose members are in the business of buying and selling precious gems. Pursuant to the DDC bylaws and the individual membership agreements, each member agrees to be bound by the bylaws and to arbitrate all disputes with other members arising out of the diamond business before a DDC arbitration panel. The bylaws also provide that each member is personally responsible for transactions with other members whether he conducts business personally, as a member of a partnership or through a corporation, and further require that members withdrawing from a partnership or corporation must immediately notify the DDC executive offices.

The underlying dispute arose as a result of an August 1994 sale of diamonds from Krischer to Daniel Sims, petitioner's son, who had previously been employed by petitioner's corporation, S & H Diamond Corp. Daniel Sims purchased the diamonds on behalf of his new corporation, Diamond Way Corp. (Diamond Way). According to Krischer, however, at the time of the purchase on consignment, Daniel Sims represented that he was still associated with his father's diamond business.

Shortly thereafter, Diamond Way's diamond inventory was allegedly stolen, resulting in its filing for bankruptcy. Since Diamond Way owed substantial amounts to various creditors who were members of DDC, an arbitration hearing before a DDC arbitration panel was scheduled for October 25, 1994. Petitioner was notified by letter that claims filed by Krischer and three other members would be heard before an arbitration panel on that date. Petitioner appeared at the hearing and testified in opposition to the claims, as did Daniel Sims. The arbitrator ruled in favor of Krischer and the three other claimants, stating in pertinent part: "After much consideration, the Arbitrators have come to the conclusion that the onus and responsibility falls upon Edward Sims to make good for his son, Daniel Sims, to * * * Sam Krischer—$37,371.00."

Petitioner commenced the instant proceeding to vacate the arbitration award primarily on the ground that the arbitration clause signed by all DDC members did not obligate him to arbitrate disputes between himself and his son's bankrupt corporation, Diamond Way, with which he denied any connection. The IAS Court agreed, finding no business connection between petitioner and Diamond Way, and that a 1987 guaranty

petitioner had executed for his son's debts had expired before the transaction at issue occurred. The court rejected the notion that "one generation is liable for the debts of another."

We reverse and grant respondents' motion to confirm the DDC's arbitration award. CPLR 7501 instructs that courts should not "pass upon the merits of the dispute" raised in an arbitration proceeding (*see, Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 307). Indeed, judicial review is so circumspect that an arbitrator's award will not be set aside even though the arbitrator misconstrues or disregards the agreement, or misapplies substantive rules of law, unless it violates strong public policy or is totally irrational (*supra,* at 308; *see also, Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629; *see also, Matter of Barzilay [Siegman]*, 161 AD2d 427, 428). Rather, a party who has been served with a notice to arbitrate, or who has participated in the arbitration, may seek vacatur only on the grounds that "the rights of that party were prejudiced by corruption, fraud or misconduct in procuring the award, partiality of an arbitrator, that the arbitrator exceeded his power or failed to make a final and definite award, or a procedural failure that was not waived (CPLR 7511, subd [b], par 1)." (*Matter of Silverman [Benmor Coats], supra,* at 307.)

The IAS Court failed to identify any statutory ground supporting vacatur, and we conclude that none exists. Petitioner's allegations of misconduct and partiality by DDC are baseless and require no discussion. The IAS Court's determination was apparently based on the rationale that holding petitioner liable for his son's debt was an act in excess of the arbitrators' powers or was simply irrational. However, considerable evidence existed to support the award. Petitioner and his son were, at one time, selling diamonds for the same corporation, rendering each of them personally liable for its obligations pursuant to DDC rules. Petitioner never notified DDC of his withdrawal from that enterprise, which is also required by DDC rules. Moreover, petitioner had executed a guaranty for his son's debts as a condition for his son's admission to DDC, and according to Krischer, Daniel Sims represented that he was still affiliated with his father's business. Although respondents apparently concede that a DDC resolution (not bylaw) limits the duration of such guarantees to five years, ample evidence existed for the arbitrators to rationally conclude that a continuing business relationship existed between petitioner and Daniel Sims.

In any event, respondents are correct in arguing that any inquiry into these factual and legal determinations of the arbitra-

tors is prohibited (*see, Matter of World Trade Diamond Corp. [Siegmann]*, 158 AD2d 300, 301). Thus, even if we disagreed with the conclusion of the arbitrator, as did the IAS Court, vacatur would be improper. An arbitrator "may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement" (*Matter of Silverman [Benmor Coats]*, *supra*, at 308; *see also, Matter of Barzilay [Siegman]*, *supra*).

Petitioner's claims that the award should be vacated due to DDC's non-compliance with the procedures of CPLR article 75 was waived by his participation in the arbitration proceeding without objection (CPLR 7511 [b] [1] [iv]). Similarly waived by his participation is petitioner's claim that there was no agreement to arbitrate this dispute (CPLR 7511 [b] [2] [ii]; *Matter of National Cash Register Co. [Wilson]*, 8 NY2d 377, 382-383; *Matter of RRN Assocs. [DAK Elec. Contr. Corp.]*, 224 AD2d 250). Petitioner's assertions that he was duped into attending the arbitration hearing, and thereafter refused to participate in it, are belied by the contents of the notice of arbitration letter sent to him, and his signature on the hearing attendance sheet, respectively. Nor has petitioner demonstrated he was prejudiced by the alleged procedural irregularities (CPLR 7511 [b] [1] [iv]).

Since no basis exists to vacate the award, Krischer's cross motion to confirm the arbitration award is granted, including his request for an additional 15% surcharge, which he properly calculates as $5,605. DDC's rules permit recovery of a 15% surcharge when a party is forced to seek judicial confirmation of an arbitration award in their favor (*see, Israel Discount Bank v Rosen*, 169 AD2d 650, 651, *lv denied* 78 NY2d 852). Accordingly, Krischer is entitled to judgment in the amount of $42,976, plus interest. Concur—Sullivan, J. P., Williams, Mazzarelli, Andrias and Colabella, JJ.