■ In the Matter of the Arbitration between North River Insurance Company, Respondent-Appellant, and Sheldon Morgan, Appellant-Respondent. [737 NYS2d 355] —Judgment, Supreme Court, New York County (Jane Solomon, J.), entered March 27, 2001, which, insofar as appealed from by respondent, granted the petition to stay arbitration, and, insofar as cross-appealed from by petitioner, granted respondent $2,555.88 in costs and expenses incurred by respondent in connection with the arbitration proceeding, unanimously reversed, on the law, with costs to respondent payable by petitioner, the petition denied, the proceeding dismissed and the award of costs and expenses vacated.

Respondent Sheldon Morgan was allegedly injured when the vehicle he was driving was hit in the rear at the Queens-Midtown Tunnel toll plaza on June 14, 1995. Morgan, who was employed by New Deal Delivery Service, Inc. (New Deal) at the time of the accident, was operating the vehicle in the course of his employment. New Deal's principal office is located in New Jersey and the vehicle Morgan was driving was owned by New Deal and registered in New Jersey.

In November 1995, Morgan's counsel forwarded a letter to petitioner The North River Insurance Company (North River), which had issued New Deal a commercial "trucker's" insurance policy (the Policy), advising that the vehicle which had struck Morgan's vehicle had only limited coverage from Eagle Insur-

ance Company (Eagle) and that Morgan, therefore, had a "potential underinsurance motorist claim."

The Policy included, inter alia, a "Trucker's Coverage Form," which essentially provides commercial automobile liability coverage to insured vehicles. The Trucker's Coverage Form also provides, under the heading "General Conditions," that the "coverage territory" is the "United States of America." Section II (A) (2) (b) (2) of the Trucker's Coverage Form, the "Out-of-State Coverage Extensions Provision," states that while "a covered 'auto' is away from the state where it is licensed we will * * * Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered 'auto' is being used."

The Trucker's Coverage Form is modified by an endorsement entitled "New Jersey Uninsured/Underinsured Motorists Coverage" (the Endorsement), which states, in relevant part, that North River "will pay all sums the insured is legally entitled to recover as compensatory damages [for bodily injury, inter alia] from the owner or driver of an 'uninsured motor vehicle' or an 'underinsured motor vehicle.'" The Endorsement also sets forth an agreement to arbitrate disputes as to "whether the insured is legally entitled to recover damages from the owner or driver of an [uninsured or underinsured motor vehicle] or * * * as to the amount of damages that are recoverable by that insured," but excludes from arbitration "disputes concerning coverage under this endorsement."

In May 1987, North River approved Morgan's acceptance of Eagle's payment of $10,000 in settlement of Morgan's action against Jose Moscoso, the owner of the other vehicle. The $10,000 sum was the full amount of Moscoso's available insurance. Morgan thereafter served North River with a demand for arbitration, dated January 8, 1998, which identified the claim as one for "Underinsured Motorist" benefits. It is undisputed that North River participated in prehearing proceedings regarding the demanded arbitration during the ensuing two years and four months prior to the commencement of this CPLR article 75 proceeding in May 2000. Indeed, North River, at a minimum: agreed with Morgan's counsel that New York arbitration rules would be applied; agreed that the third arbitrator would be selected by the American Arbitration Association (rather than by the two party-selected arbitrators, as provided by the arbitration clause of the Endorsement); designated an arbitrator; received medical reports and records relating to Morgan's claim; and apparently agreed to reschedule the arbitration hearing to the adjourned date of May 10, 2000.

North River subsequently commenced the within proceeding to stay arbitration by order to show cause one week prior to the date on which the arbitration hearing was scheduled to go forward. North River argued, inter alia: that the Out-of-State Coverage Extensions Provision of the Trucker's Coverage Form did not afford underinsured motorist coverage outside of New Jersey, since such coverage is optional in New York; that the requirement set forth in CPLR 7503 dictating that a petition to stay arbitration be served within 20 days of the service of the demand for arbitration is inapplicable as no agreement to arbitrate exists; and that it did not participate in the arbitration, a position it has prudently abandoned on appeal.

Morgan, in opposition, maintained that the petition was barred as untimely by North River's participation in the arbitration, as well as the fact that an endorsement to the Policy expressly designates Morgan as an additional insured. Morgan also asserted that the Endorsement does not include any provision limiting coverage to accidents which occur in New Jersey. Additionally, Morgan cross-moved for sanctions against North River, pursuant to 22 NYCRR part 130, based primarily on the untimeliness of the petition and North River's failure to inform the court of its substantial participation in the arbitration.

The IAS court accepted North River's interpretation of the Policy, relying on the Trucker's Coverage Form's Out-of-State Coverage Extensions Provision, which it held limited underinsured motorist coverage to accidents occurring in New Jersey. The court also agreed with North River that because there was no coverage for the accident in question, and the arbitration clause of the Endorsement expressly provides that coverage disputes are nonarbitrable, the 20-day limitation period set forth in CPLR 7503 is inapplicable. We disagree and reverse.

In our view, it is clear after a review of the Policy that coverage extends to accidents occurring anywhere in the United States. We note that the Policy's Trucker's Coverage Form, which is modified by the Endorsement, provides in section V (B) (7) that the "coverage territory" thereunder includes the entire United States. Nothing in the Endorsement modifies the provision in any manner, or otherwise addresses the territorial scope of coverage. The fact that the Endorsement's title refers to New Jersey merely indicates that it conforms to New Jersey legal requirements and is, therefore, appropriate for purchase by insureds owning vehicles in New Jersey.

The Trucker's Coverage Form's Out-of-State Coverage Extensions Provision, which is the basis for North River's argument,

and the Supreme Court's finding, that underinsured motorist coverage under the Policy is limited to New Jersey accidents, on its face has no relevance to the scope of the coverage afforded by the Endorsement. The Out-of-State Coverage Extensions Provision simply provides that the Trucker's Coverage Form affords "the minimum amounts and types of other coverages" required by law while a covered vehicle is "away from the state where it is licensed[.]" It does not indicate any intent to limit the territorial scope of coverage expressly provided by the Trucker's Coverage Form or any endorsement thereto. Such intent cannot logically be inferred merely from the fact that states require minimum amounts of uninsured motorist coverage. Accordingly, since there is no coverage dispute, the arbitration provision of the Policy is applicable.

We also find that North River's participation in the arbitration proceeding acts as a bar to the within proceeding, notwithstanding the existence of a coverage issue which under the Policy is not subject to arbitration. CPLR 7503 (b) provides that an application to stay arbitration may only be brought by a party "who has not participated in the arbitration * * *." Consistent with the foregoing statutory language, North River's participation in the arbitration, i.e., by selecting an arbitrator, waives any objection that there was no agreement to arbitrate as a ground for vacating an award (see, CPLR 7511 [b] [2] [ii]; *Binghamton Civ. Serv. Forum v City of Binghamton*, 44 NY2d 23, 29 n; *Matter of Sims v Siegelson*, 246 AD2d 374, 377; *Matter of RRN Assoc. [DAK Elec. Contr. Corp.]*, 224 AD2d 250).

Finally, we find the IAS court's reliance on *Matter of Matarasso (Continental Cas. Co.)* (56 NY2d 264) to be misplaced. In *Matarasso*, the Court specifically held that "where the application for a stay is made on the ground that no agreement to arbitrate exists, it may be entertained notwithstanding the fact that the stay was sought after the 20-day period [set forth in CPLR 7503 (c)] had elapsed," and further opined that "we cannot impute to the Legislature an intent to bind persons to the arbitral process by their mere inaction for 20 days where no agreement to arbitrate has ever been made" (*id*. at 267). The Court in *Matarasso* did not discuss the no-participation prohibition of CPLR 7503 (b), and there is no indication that the insurance company seeking the stay in *Matarasso* had participated in the arbitration in any manner prior to seeking a stay approximately six weeks after the 20-day limit had expired. Here, North River actively participated in the arbitration process for a period greater than two years and, on these grounds, we find *Matarasso* distinguishable. Concur—Nardelli, J.P., Andrias, Saxe, Sullivan and Rubin, JJ.