■ In the Matter of LESLIE DOWLEYNE et al., Respondents, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [765 NYS2d 361] —Order and judgment (one paper), Supreme Court, New York County (Joan Madden, J.), entered December 19, 2002, which, inter alia, granted the motion of petitioners Dowleyne and Toussaint, pursuant to CPLR 7510, to confirm an arbitration award that overturned respondent's determination that petitioner Dowleyne had, by failing to produce an adequate urine sample, refused to submit to a random drug test and directed respondent to reinstate Dowleyne as a bus driver,

unanimously reversed, on the law, without costs, the motion denied, the cross petition granted, the arbitration award vacated, and the petitioner removed from performing the safety-sensitive function of driving a bus.

Petitioner Leslie Dowleyne had been working as a bus driver for respondent New York City Transit Authority (NYCTA) for approximately 14 months, when, on May 1, 2001, she was randomly called to a NYCTA office to undergo a drug test. To carry out the test, United States Department of Transportation (DOT) regulations required an employee to provide a 45 milliliter urine sample (49 CFR 40.25 [f] [10]).* She was unable to produce an adequate specimen. She was then required to drink 40 ounces of liquid within a three-hour period. Dowleyne was still unable to supply the required specimen. She was then referred to the attending physician, who could ascertain no medical reason for the failure to produce sufficient urine. Pursuant to 49 CFR 40.25, she was sent for an evaluation from a licensed physician acceptable to the employer. After examining Dowleyne, the doctor reported that she had no medical condition that would limit her ability to provide an adequate urine sample. Based upon this, the NYCTA designated medical review officer (MRO) determined that Ms. Dowleyne's failure to provide a sufficient amount of urine constituted a "refusal" to take the test.

Upon a finding of a refusal, the parties' collective bargaining agreement (CBA) allows the employer to institute disciplinary proceedings. After receiving the MRO's report, the NYCTA did so. NYCTA also imposed a predisciplinary suspension, and it informed Ms. Dowleyne that it intended to fire her. The union filed a grievance for Ms. Dowleyne. She was referred to a third doctor, who diagnosed her with slow urine flow, with periodic inability to urinate at all and a decreased bladder capacity. The MRO then referred Ms. Dowleyne to a fourth physician, who concluded that although she suffered from urgency incontinence, there was no medical evidence to explain her inability to provide a sufficient urine sample in a three-hour period.

On November 1, 2001, NYCTA and the Transport Workers Union (TWU) submitted the issue of whether the NYCTA had cause to discipline Dowleyne to arbitration. The arbitration

---

* The citations herein to 49 CFR part 40, and 49 CFR part 653 refer to the regulations in effect in May 2001, when the instant drug test took place. Although 49 CFR part 40 has since been reconfigured to encompass former 49 CFR part 653, and has been renumbered, the substance of the regulations has not been changed.

panel (the Board) held a hearing, and a majority of the Board concluded that NYCTA could not discipline Ms. Dowleyne. One of the three Board members dissented. On cross petition to dismiss and vacate the award, the court confirmed the arbitration award. This appeal ensued.

As a general rule, courts will not interfere with either the process or the outcome of matters submitted to arbitration (*Matter of New York City Tr. Auth. v Transport Workers Union of Am.*, 99 NY2d 1, 6 [2002]). However, there is a public policy exception to this rule, and we may vacate an arbitration award if this exception applies. "[P]ublic policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631 [1979]). Strong public policy considerations, which are embodied in the express terms of DOT regulations, militate against allowing anyone who did not comply with random drug testing procedures from performing safety sensitive functions.

The NYCTA is required to comply with safety regulations issued by DOT and by the Federal Transit Administration (FTA). These regulations are detailed and include required random unannounced drug testing of mass transit employees who are responsible for "safety-sensitive functions" (49 USC § 5331 [b]). This includes bus drivers. After fully complying with these rules, the MRO determined that Dowleyne had "refuse[d] to submit" a urine sample pursuant to 49 CFR 653.7. The rules also require that in such a case, an employer direct the employee to cease performing safety-sensitive functions (49 CFR 653.35 [a]). In addition, they mandate that an employee be prohibited from resuming performance of safety-sensitive functions until he or she has been evaluated by a substance abuse professional and taken a "return to duty drug test with a verified negative result" (49 CFR 653.49 [a] [2]).

Ms. Dowleyne argues that nevertheless, based upon precedent from the Court of Appeals, the arbitration award must be upheld (*Matter of New York City Tr. Auth. v Transport Workers Union of Am.*, 99 NY2d 1 [2002]). In the *Transit Authority* case, which Dowleyne asserts controls, the Court of Appeals reviewed two arbitration proceedings where employees had been fired for violating safety regulations. In both, the arbitrator had found the penalty of dismissal to be excessive in the

circumstances, and reinstated the petitioners. The Court of Appeals rejected NYCTA's and Manhattan and Bronx Surface Transit Operating Authority's (MABSTOA) attempt to invoke Public Authorities Law § 1204 (15) in support of judicial intervention. That section is a general provision which granted NYCTA and MABSTOA authority "[t]o exercise all requisite and necessary authority to manage, control and direct the maintenance and operation of transit facilities * * * for the convenience and safety of the public."

Unlike the issue in the *Transit Authority* case, the issue presented here is whether the public policy involved, which is derived from a set of specific federal regulations, including a mandate that an employee who has "refused" to take a drug test be removed from performing safety-sensitive functions, can override the findings of certain arbitrators. The Court of Appeals in *Transit Authority* focused on the contractual provisions between the employers and the employees' union, and found that the arbitrators had discretion to determine the appropriate penalty for the infractions committed by the two employees in those appeals, and that those matters were governed by the particular contract. While the collective bargaining agreement here also contains a provision for arbitration, the federal regulations involved trump any contractual agreement. The parties cannot make a contract which conflicts with the explicit terms of a federal statute and its implementing regulations. In this case, the regulations specifically require a given penalty; that is, that the employee who has refused to take a drug test be removed from performing a safety-sensitive function, such as driving a bus, and that she not be reinstated to such position without a verified negative drug test result by a substance abuse professional. The regulations are not discretionary, and the collective bargaining agreement cannot be utilized to frustrate their mandate.

Further, the arbitrators' determination to reinstate Ms. Dowleyne undermines the important policy of keeping drug users from performing safety-sensitive functions. It also subverts the NYCTA's anti-drug policy, and it undermines any deterrent effect on other employees (*see Exxon Shipping Co. v Exxon Seamen's Union*, 993 F2d 357, 360 [3d Cir 1993]). The ultimate goals of the DOT regulations are the safe operation of NYCTA vehicles and the protection of the public. These can only be accomplished if the regulations are strictly enforced.

Accordingly, as the arbitration award directing NYCTA to reinstate Ms. Dowleyne violated these regulations, it is vacated. Concur—Nardelli, J.P., Mazzarelli, Friedman and Marlow, JJ.