Matter of Walker (Read) (2019 NY Slip Op 00340)





Matter of Walker (Read)


2019 NY Slip Op 00340


Decided on January 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 17, 2019

526533

[*1]In the Matter of the Arbitration between DOUGLAS A. WALKER, as President of the Plattsburgh Permanent Fireman's Association, Local 2421, IAFF, Respondent, and COLIN L. READ, as Mayor of the City of Plattsburgh, et al., Appellants.

Calendar Date: December 12, 2018

Before: Lynch, J.P., Clark, Mulvey, Devine and Rumsey, JJ.


Coughlin & Gerhart, LLP, Binghamton (Robert H. McKertich of counsel), for appellants.
Satter Law Firm, PLLC, Syracuse (Sarah E. Ruhlen of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from an order of the Supreme Court (Powers, J.), entered January 25, 2018 in Clinton County, which, among other things, granted petitioner's application pursuant to CPLR 7510 to confirm an arbitration award.
Petitioner is the collective bargaining representative of uniformed firefighters employed by respondent City of Plattsburgh, with the exception of the Fire Chief and the Assistant Fire Chief. Since the expiration of their collective bargaining agreement in December 2007, the parties have participated in compulsory interest arbitration three times to resolve disputes that arose during their negotiations of successor agreements (see Civil Service Law § 209 [4]). In 2016, the parties participated in a public interest arbitration panel that resulted in an arbitration award covering the 2012-2013 contract period. Specifically, with respect to that contract period, the panel issued an opinion and award — with one member dissenting — that granted the firefighters a 2% wage increase for 2012 and 2013, carried through 2017, and directed that all retroactive payments be disbursed within 45 days of the award.[FN1]
In July 2017, after respondents failed to implement the mandated wage increases and make the required retroactive payments, petitioner commenced this CPLR 7510 proceeding seeking to confirm the arbitration award. Respondents answered and cross-moved, pursuant to CPLR 7511, to vacate the award as being violative of public policy and exceeding the scope of the panel's authority. Supreme Court granted petitioner's application, denied respondents' cross motion and confirmed the award, prompting this appeal by respondents.
Consistent with a general policy of supporting and encouraging the resolution of disputes through arbitration (see Matter of City of Oswego [Oswego City Firefighters Assn., Local 2707], 21 NY3d 880, 882 [2013]; Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 6 [2002]), judicial interference with an arbitration award is confined to narrowly circumscribed circumstances (see Matter of Kowaleski [New York State Dept. of Correctional Servs.], 16 NY3d 85, 90-91 [2010]; Matter of Sprinzen [Nomberg], 46 NY2d 623, 629-630 [1979]). In particular, courts may vacate an arbitration award if the arbitrator exceeded his or her authority by issuing an award that violates a strong public policy, is irrational or clearly exceeds a specific, enumerated limitation on the arbitrator's power (see Matter of Shenendehowa Cent. Sch. Dist. Bd. of Educ. [Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO, Local 864], 20 NY3d 1026, 1027 [2013]; Matter of Falzone [New York Cent. Mut. Fire Ins. Co.], 15 NY3d 530, 534 [2010]; Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO, 6 NY3d 332, 336 [2005]). "Even where an arbitrator has made an error of law or fact, courts generally may not disturb the arbitrator's decision" (Matter of Falzone [New York Cent. Mut. Fire Ins. Co.], 15 NY3d at 534; accord Matter of Kowaleski [New York State Dept. of Correctional Servs.], 16 NY3d at 91).
Here, respondents urge us to vacate the arbitration award on the basis that it violates public policy. To vacate an arbitration award on public policy grounds, there must be "strong and well-defined policy considerations embodied in constitutional, statutory or common law [that] prohibit a particular matter from being decided or certain relief from being granted by an arbitrator" (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 327 [1999]; accord Matter of Bukowski [State of N.Y. Dept. of Corr. & Community Supervision], 148 AD3d 1386, 1388 [2017]; see Matter of Livermore-Johnson [New York State Dept. of Corr. & Community Supervision], 155 AD3d 1391, 1396 [2017]). For relief granted by an arbitrator to be violative of public policy, "courts must be able to examine [the] arbitration . . . award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement" (Matter of Sprinzen [Nomberg], 46 NY2d at 631; accord Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO, 99 NY2d at 7). In other words, judicial inquiry is constrained to determining whether "the actual result of the arbitration process" — without evaluation of the underlying rationale — "on its face, and 'because of its reach, . . . violates an explicit law of this [s]tate'" (Matter of Bukowski [State of N.Y. Dept. of Corr. & Community Supervision], 148 AD3d at 1388, quoting Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d at 327).
Respondents assert that, as demonstrated by the enactment of chapter 67 of the Laws of 2013, a strong public policy exists in this state "to control and stabilize the [general] fund balance and real property tax levies of 'fiscally eligible municipalities' who are experiencing ongoing fiscal distress." They argue that the award of a 2% salary increase for 2012 and 2013, carried through 2017, would deepen the municipality's fiscal crisis by requiring it to completely deplete its general fund balance and raise taxes over the tax cap. They contend that such a result undermines the purpose behind creating the "fiscally eligible municipality" designation in the first place. We are unpersuaded by this argument.
Contrary to respondents' contention, the policies embodied in chapter 67 of the Laws of 2013 are not of the type that prohibit, in an absolute sense, an arbitrator from awarding a salary increase to employees of a fiscally eligible municipality. As relevant here, chapter 67 of the Laws of 2013 amended, among other statutes, the Civil Service Law, thereby establishing a permanent financial restructuring board for local governments to "provide a meaningful, substantive avenue for fiscally eligible municipalities to reform and restructure and provide public services in a cost-effective manner," while also setting "new parameters for arbitration awards" involving fiscally eligible municipalities (Sponsor's Mem in Support, Bill Jacket, L 2013, ch 67; see Civil Service Law § 209 [6]). A public employer is deemed a "fiscally eligible municipality" if its "average full value property tax rate," as that term is defined by statute, is greater than the average full value property tax rate of 75% of other public employers with local fiscal years ending in the same calendar year or, alternatively, if its "average fund balance percentage," as that term is statutorily defined, is less than 5% and the comptroller has provided the certification required by statute (Civil Service Law § 209 [6] [b], [c], [d]). Where, as here, the public interest arbitration panel determines that the public employer is a fiscally eligible municipality, the panel must, "first and foremost, consider [the public employer's] ability to pay by assigning [that criterion] a weight of [70%]" (Civil Service Law § 209 [6] [e]), while assigning an aggregate weight of 30% to the remaining statutory criteria (see Civil Service Law § 209 [4] [c] [v]; [6] [e]).
The statutory amendments do not, as respondents contend, reveal strong and well-defined policy considerations prohibiting, in an absolute sense, the relief awarded here — that is, the 2% salary increases and the retroactive payments flowing therefrom (see Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO, 99 NY2d at 11-12; cf. City School Dist. of the City of N.Y. v McGraham, 17 NY3d 917, 919-920 [2011]). The amendments made to Civil Service Law § 209 through the enactment of chapter 67 of the Laws of 2013 clearly evince a general policy recognizing the importance of considering, during the arbitration process, the fiscal status of fiscally-distressed municipalities. The law requires only that, when resolving a dispute and fashioning an award, the public interest arbitration panel accord a weight of 70% to a fiscally eligible municipality's ability to pay (see Civil Service Law § 209 [6] [e]). It is clear from the opinion and award that the panel complied with its mandate and accorded that factor the required 70% weight.
Respondents disagree with the panel's weighing of the statutory factors and argue that compliance with the award will further impair the municipality's fiscal status. We cannot, however, reweigh the statutory factors and substitute our judgment for that of the panel (see Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d at 326; Matter of Sprinzen [Nomberg], 46 NY2d at 630-631; Matter of City of Buffalo v Rinaldo, 41 NY2d 764, 768 [1977]). Nor can we engage in the extended fact-finding or legal analysis required by respondents' argument (see Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO, 99 NY2d at 8-9; Matter of Sprinzen [Nomberg], 46 NY2d at 631). Viewed on its face, the arbitration award is not prohibited by a strong and well-defined policy embodied in law (see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d at 11-12; compare Matter of Bukowski [State of N.Y. Dept. of Corr. & Community Supervision], 148 AD3d at 1389-1392). Thus, there is no basis upon which to invoke the public policy exception to vacate the arbitration award. For similar reasons, we find no merit to respondents' contention that the award mandates legislative action and that, therefore, the panel exceeded the scope of its authority (see Matter of Buffalo Professional Firefighters Assn., Inc., IAFF Local 282 [Masiello], 105 AD3d 1436, 1436-1437 [2013]).
To the extent that we have not addressed any of respondents' remaining arguments, they have been reviewed and determined to be unavailing.
Lynch, J.P., Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Before issuing this arbitration award, the panel afforded the parties an opportunity to consent to an alternate proposed opinion and award granting the panel the authority to issue a determination addressing more than a two-year period (see Civil Service Law § 209 [c] [vi]) and, if agreed to, providing for, among other things, a 1.5% wage increase for 2012, 2013 and 2014 and a 1.75% wage increase for 2015, 2016 and 2017. However, the Common Council of the City of Plattsburgh unanimously rejected this alternate proposed opinion and award.